IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIM. NO. 1:11-CR-15 (WLS) |
| | : |
| ENRIQUE MIGUEL DELUNA | : |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
OBTAINED BY CONSENT SEARCH**

COMES NOW, the United States of America, by and through the undersigned United States Attorney, and responds in opposition to Defendant's Motion to Suppress:

**STATEMENT OF FACTS**

On February 9, 2010, local law enforcement agents in East Chicago, Indiana, received a request to investigate a missing child from the FBI . The child, "Heather," had disappeared from her home in Albany, Georgia, in early February 2010, and her whereabouts were unknown. The police had information that Heather had been in frequent contact by internet with defendant Deluna, who was believed to be sexually interested in the defendant. Accordingly, officers in East Chicago, Indiana, sought to locate him and the computer(s) he used to communicate with Heather. The computers were believed to contain information

1

about the minor victim's whereabouts. And in fact, when later reviewed by law enforcement agents, the computers contained valuable incriminating information about Deluna's internet crimes against a child: 1) his criminal enticement of a minor to have sex; 2) his plans to travel to Georgia for purposes of having sex with a minor; and 3) his intent to transport the minor to San Antonio to commit a sex crime against her.

## CITATION OF AUTHORITY AND ARGUMENT

The Government submits that the search and seizure in question was valid on two grounds: 1) that the agents properly obtained consent from the defendant's mother to search to search two items of computer media in her custody, and 2) that there were exigent circumstances, to wit, a child who had gone missing and was believed to be in the presence of a potential child predator, which allow seizure without a warrant.

### I. Defendant's Mother Gave Valid Third Party Consent:

Marta Luna, mother of the defendant, gave valid, written consent for the officers to search and seize two computers at her residence. At the hearing on this motion on September 8, 2011, Officer Phillip Garzella testified to the following facts: He received a lead to investigate a missing child, went to the place of work of Marta Deluna, and told her the purpose of his inquiry – assistance in locating a

missing juvenile believed to be in the company of her son. Marta Deluna agreed to assist and allowed law enforcement agents to drive her to her residence in order to obtain the two computer items. She spoke freely to the officers about her son's whereabouts – believed to be San Antonio, Texas. The defendant left East Chicago suddenly. His mother had recently seen him on a web cam with a cousin who lived in San Antonio.

In the defendant's video-taped statement he stated that he was looking for work in San Antonio and that he had been staying with his mother intermittently: "On Parrish [Street], that's where I'm staying at, you know. *I don't really have an exact home; I just live there when I can.*" (Exhibit 2A, Transcript of Defendant's Interview, p. 7. )(Emphasis added).

Mrs. Deluna stated that she and her children all used the computer and the PlayStation III. She willingly gave written consent for the seizure of these items. The written consent waiver, with Ms. Deluna's signature and the signature of Officer Garzella, was tendered into evidence at the hearing.

The defense proffered verbally at the hearing that one item of computer media seized was registered to "Deluna," and the government did not contest this assertion. However, in isolation, this piece of information is meaningless: 1) first, both the defendant and his mother, and presumably other family members have the

same last name; and 2) the fact of simple ownership, if indeed the computer were owned and registered to the computer, does not prove that third parties did not have the owner's consent to use the computer. The defense put up no other evidence. There is ample evidence that the consent to search was valid, and on the other hand, no evidence in the record that the consent was coerced or unauthorized. Defense counsel's suggestions on cross-examination are not evidence.

Further, it appears from his own statement that the defendant had abandoned his mother's house, moved to San Antonio, Texas, and was actively looking for work. Accordingly, the defendant does not have an expectation of privacy in the computer media at his mother's house which he abandoned. In determining whether there has been abandonment, the critical inquiry is whether the person prejudiced by the search voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy in it. United States v. Ramos, 12 F.3d 1019) (11th Cir. 1994).

In United States v. Matlock, 415 U.S. 164, 171 (1974), the Supreme Court held that common authority for purposes of consent to search "rests [ . . . ] on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants

has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common are to be searched." Id. And in Illinois v. Rodriguez, 497 U.S. 177 (1990), the Court further expanded this principle to include consent searches given by a third party where the police reasonably believe the third party has common authority over the premises, even if the third party does not in fact have such authority. Accord United States v. Fernandez, 58 F.3d 593 (11th Cir. 1995); United States v. Garcia-Jaimes, 484 F.3d 1311, 1323 (11th Cir. 2007), overruled in part, Regalado Cuellar v. United States, 128 S.Ct. 1994 (2008); United States v. Brazel, 102 F.3d 1120 (11th Cir. 1997)(officer reasonably believed that the landlord could give consent to search apartment because it appeared that occupant had abandoned the premises).

## II. Exigent Circumstances – A Missing or Abducted Child:

If this Court should find the consent to search given by the defendant's mother to be invalid, the search of the computer media should still be upheld given the exigent circumstances.

> One such exception is that the police may enter a private premises and conduct a search if "exigent circumstances" mandate immediate action. The exigent circumstances exception recognizes a "warrantless entry by criminal law enforcement officials may be legal when there is a compelling need for official action and no time to secure a warrant." The exception encompasses several common situations where resort to a magistrate for a search warrant is not feasible or advisable, including: danger of flight or escape, loss or

destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit.

United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002) (citations omitted). In United States v. Bradley, 321 F. 3d 1212, 1215 (9th Cir. 2003), the court held, "the possibility of a nine-year old child in a house in the middle of the night without supervision of any responsible adult is a situation requiring immediate police attention."

The court in Holloway went on to specifically recognize that emergency situations can give rise to exigent circumstances justifying a warrantless search: "We conclude emergency situations involving endangerment to life falls squarely within the exigent circumstances exception. It is difficult to imagine a scenario in which immediate police action is more justified than when a human life hangs in the balance. Although the Fourth Amendment protects the sanctity of the home, its proscription against warrantless searches must give way to the sanctity of human life. When the police reasonably believe an emergency exists which calls for an immediate response to protect citizens from imminent danger" the exigent circumstances exception applies. Id. at 1337.

"The test of whether exigent circumstances exist is an objective one." United States v. Rodgers, 924 F.2d 219, 222 (11th Cir. 1991). Simply put, the issue is whether the officers acted reasonably, for "[w]here Fourth Amendment issues are

involved, the fundamental inquiry is whether a search or seizure was reasonable under all the circumstances." United States v. Wilson, 671 F.2d 1291, 1293 (11th Cir. 1982). "Reasonableness . . . is founded not on technicalities, but on 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Ragsdale, 470 F.2d 24, 30 (5th Cir. 1972) (quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310 (1949)).

The exigencies must be viewed from the totality of the circumstances known to the officers at the time of the warrantless intrusion. United States v. George, 883 F.2d 1407, 1412 (9th Cir. 1988) (citing United States v. Licata, 761 F. 2d 537, 543 (9th Cir. 1986)). The subjective intentions of the officers are irrelevant to Fourth Amendment analysis. Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769 (1996). The Eleventh Circuit has held that the test for whether or not exigent circumstances exist is whether the facts would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured. United States v. Rush, 248 F. Supp. 2d. 1121, 1123 (M.D. Ala. Feb. 20, 2003) (citing United States v. Reid, 69 F.3d 1109, 1113 (11th Cir. 1995)).

The gravity of the underlying offense is an essential component of the exigency calculus. Welsh v. Wis., 466 U.S. 740, 753 104 S. Ct. 2091, 2099 (1984). The need to invoke the exigent circumstances exception to the warrant requirement is particularly compelling in narcotics' cases because narcotics can be so easily and quickly destroyed. United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990), *cert. denied*, 502 U.S. 825, 112 S. Ct. 90 (1991). Thus, the proper inquiry is not whether the agents possibly could have obtained a warrant before entering the property. Rather, the reasonableness of a search under exigent circumstances is not foreclosed by the failure to obtain a warrant at the earliest practicable moment but is determined by whether it was reasonable for the officers to believe that evidence might be destroyed before a warrant could be secured. Id. A court should consider whether *any* of the evidence might be destroyed. Rush 248 F. Supp. 2d at 1124. This must be done from the perspective of a reasonable officer on the scene taking into consideration the actual circumstances presented to him at the time he had to make a decision whether to proceed without a warrant. Id. at 1125. Whether the officer's suspicion ends up being mistaken is immaterial so long as it was reasonable. United States v. Jones, No. 3:09-CR-131-J-20-MCR, 2009 WL 4110871 (M.D. Fl. Nov. 24, 2009). While the opportunity to seek a

warrant is not determinative, it is certainly relevant when exigent circumstances are pleaded. United States v. Duchi, 906 F. 2d. 1278 (8th Cir. 1990).

The officers could have seized the items of computer media without a warrant based on the threat of imminent harm to a child. In fact, the minor had left her home in the company of Deluna and traveled to San Antonio, Texas, where he had sex with her. At the time of the consent search Heather was missing. Although the officers obtained consent to search and seize the computer media, in fact, an officer could properly have seized the computer based on the imminent threat of danger to a missing child.

### III. The Exclusionary Rule Should Not Apply:

The benefit of applying the exclusionary rule must be weighed against the substantial cost of letting guilty and possibly dangerous defendants go free. The exclusionary rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application. Herring v United States, 555 U.S. 135, 129 S. Ct. 695 (2009). The exclusionary rule is a rule of last resort. It is not an individual right. It is an extraordinary remedy not required by the text of the Fourth Amendment. Id. at 141, 129 S. Ct. at 700. It should *only* be applied when it results in appreciable deterrence and the benefits of deterrence outweigh the societal costs of suppressing evidence, thereby frustrating the truth-seeking

process. United States v. Janis, 428 U.S. 433, 454 96 S. Ct. 3021, 3032 (1976) (emphasis added). To trigger the exclusionary rule, police misconduct must be deliberate, reckless, grossly negligent, recurring or the product of systemic negligence. Herring 555 U.S. at 143-44, 129 S. Ct. at 702. Nearly a century ago, Judge, later Justice, Cardozo made his seminal observation that under the exclusionary rule "[t]he criminal is to go free because the constable has blundered." People v. Defore, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926). Prophetically, he went on to consider "how far-reaching in its effect upon society" the exclusionary rule would be when "[t]he pettiest peace officer would have it in his power through overzeal or indiscretion to confer immunity upon an offender for crimes the most flagitious." Id. at 23, 150 N.E. at 588.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the defendant's motion to suppress evidence be denied.

Respectfully submitted this 12th day of September 2011.

>
> MICHAEL J. MOORE
> UNITED STATES ATTORNEY
> s/ Jim Crane
> BY:   Jim Crane
> ASSISTANT UNITED STATES ATTORNEY
> 201 West Broad Avenue, 2nd Floor
> Albany, GA 31701
> T:     229-430-7754
> F:     229-430-7766

# CERTIFICATE OF SERVICE

I, Jim Crane hereby certify that on this 12th day of September, 2011, I electronically filed the within and foregoing Response with the clerk of the Court using CM/ECF system which will send notification of such filing to the following:

    Ms. Nicole Williams
    Assistant Federal Defender
    Counsel for Defendant

        s/Jim Crane
        ASSISTANT UNITED STATES ATTORNEY